Joshua B. Taylor, ISB# 7301
The Law Office of Joshua B. Taylor, PLLC
250 S. 5th St., Ste. 850
Boise, ID 83702
t: 208-336-1880
f: 208-429-1100
e: joshuabtaylorlaw@gmail.com

*Attorney for James Smith*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| United States, | ) |
| | )    Case No: 1:24-cr-99-BLW |
|        Plaintiff, | ) |
| | )    SENTENCING MEMORANDUM |
|        vs. | ) |
| | ) |
| James Smith, | ) |
| | ) |
|        Defendant. | ) |

"For every bad thing I do, I have to do ten good things for others."

~ James Smith, to his sister, Kristine.

## BACKGROUND

James was born in Palo Alto in 1992. (PSR ¶ 66). His mother, Kareen, describes him as an amazing person to be around with a knack for making people smile and a unique ability to recognize when others are struggling.

At a young age he was exposed to illegal substances and a wild lifestyle by his parents, marked by violence from his father and abuse. (PSR ¶ 66). This experience is perhaps best punctuated by the moment when James, as a six-year old, walked into his family living room to find his stepfather dead of an overdose. (PSR ¶ 66). During his childhood and into his teenage years, James began using

and continued using illegal drugs through his teenage years.  (PSR ¶¶ 74-80).
Throughout that time period, he had contacts with the criminal justice system.

At age 21, however, James found sobriety and mended fences with his father.
(PSR ¶ 69).  For nearly a decade, he truly lived the concept that "for every bad thing
I do, I have to do ten good things for others."  He involved himself in the sober living
community; he became a leader, gave motivational speeches and encouraged others
to remain sober.  In 2023, James moved with his father to Idaho to care for James'
grandfather who was struggling with dementia.  (PSR ¶ 69).  James found work and
a place to live.

As a result of James' nearly ten-year period of sobriety, he received the
benefit of having been sober enough and out of trouble enough that United States
Sentencing Guidelines recognize him as a person with zero criminal history (points)
in spite of all of his prior charges.

In 2024, James' live-in girlfriend became disabled. She was unable to walk
and James carried her from the bed to the shower and everywhere she went in the
house.  He bought the groceries, took on an extra job to pay the bills, and felt like he
had found a new purpose in life.  His girlfriend underwent two neck surgeries to fix
the problem.  After the surgeries, she had to go to Elks Vocational Rehab for two
months to learn to walk again. Because she would be coming home in a wheelchair,
James began cleaning out the house and taking extra things and bags of clothing to
goodwill.  While going through the laundry, James came across a 'meth pipe' that he

did not know his girlfriend had.  The pipe still had a small usable amount in it.
James relapsed, lost both jobs, and ended up in federal custody.

## BACKGROUND

On April 9, 2024, an indictment was issued including James.  After learning about the outstanding warrant and indictment, James self-surrendered on July 30, 2024. (dkt. 99).  After motions and responses regarding detention, the Government stipulated to James' release under certain conditions.  (dkt. 106-107).  Upon his release, James was to go directly to participate in Moonlight Mountain recovery treatment.  James bonded out and went, as planned, to Moonlight Mountain recovery treatment where he earned a furlough for an evening barbecue.

At the time, James had just been served with a no contact order with the alleged victim in his battery case, which included a no contact order with the address where the alleged victim and James were living before he was arrested.[1] James was told his roommate had moved out.  While at the barbeque James learned the roommate had not moved out.  James left but was stopped by police and, as a result, James came back into custody and was charged with an additional misdemeanor for the violation of a no contact order.

James has made efforts to resolve those outstanding cases to the satisfaction of the prosecution and the alleged victim in Canyon County.  This is mentioned because, as part of a global offer from the Canyon County prosecutor's office, they

---

[1] The home has separate entrances and locked doors that separate the living spaces, essentially, James' roommate lived in a downstairs apartment of the house.

have agreed to dismiss both of those misdemeanor cases upon James' sentencing in this case.  (PSR ¶ 58).

In addition to resolving the outstanding misdemeanors prior to sentencing, when James learned about the outstanding warrant with Ada County through the PSR, he directed efforts to resolve all three cases at the same time.  (PSR ¶ 57). Despite the Ada County Prosecutor's Office knowing how to perform writs ad prosequendum,[2] they have not done so in James' case, and attempts to resolve his case jointly, or have him writted out of federal custody for prosecution, or even to have the outstanding warrant replaced with a bail from a remote hearing, have all been rebuffed or ignored.

As a result of the Ada County Prosecutor's Office refusing to allow James to take care of all matters prior to being incarcerated despite his efforts, James will likely spend the full time of any sentence imposed by the Court in prison than treatment (for instance, rather than being able to be accepted into RDAP and released early to a residential reentry center); and so, because Ada County has elected to leave the warrant outstanding, James is not eligible for RDAP or early residential placement.[3]  James is also incapable of initiating the Interstate Agreement on Detainers Act because it has to be initiated in writing by the receiving state.  Because there is no guarantee that Ada County will serve a written

---

[2] See, for instance, U.S. v. Koski, 1:23-cr-323-AKB, where Ada County 'writted' Mr. Koski out of federal custody five times.

[3] Bureau of Prison Program Statement 7310.04(10) specifies: "Inmates in the following categories shall not ordinarily participate in CCC programs: ... (f) Inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement."  See *Abbott v. Thomas*, No. 3:11-cv-01047-MO, 2012 U.S. Dist. LEXIS 142109, at 14 (D. Or. Sep. 28, 2012) (upholding the BOP policy excluding inmates with outstanding warrants from participating in RDAP).

detainer[4] upon James throughout his entire time in federal prison, and because James cannot initiate a request for relief under the Interstate Detainers Act until *after* the State of Idaho has served a *written* document on the warden of the BOP facility where James is housed, Ada County has the power to control a portion of the punishment imposed by a federal judge simply by choosing who to writ out of custody, and who to leave stranded and never serve with a written detainer, should they choose to do so – despite the outstanding warrant. James respectfully requests the Court consider this effect, whether intentional on the part of Ada County or not, on the sentence.

## CHARACTER, SUPPORT, AND PROGRESS

James has the support of family and friends.  His grandma Cathy notes in her letter, "James is an individual with a strong sense of empathy, kindness, and compassion…  I have witnessed James take responsibility for his actions and make amends when necessary."  Which echoes what his sister said about repaying things ten times over.

James' older sister Kristine describes James as someone who recognizes something that needs to be done and does it without question or expectation and provides an example of James tackling their overgrown yard without being asked and then tackling their elderly neighbors' yard for three days until it was new.

---

[4] An actual written document must be served on a defendant in a BOP facility *before* the inmate can begin the process to request IADA relief.  See *State v. Bronkema*, 109 Idaho 211, 214 (Ct. App. 1985): Based on the foregoing, we hold that the term "detainer" as used in the Agreement on Detainers, I.C. § 19-5001, and as construed by the United States Supreme Court entails some form of *written* communication *initiated by the receiving state* which is filed or lodged with the custodial or sending state. (emphasis in original).

After James came back into custody after being out on pretrial release, he made the best of what was available to him in the Jerome County Jail.  He completed over 100 courses through the Collaboration online program, and he became engaged in the local H.O.P.E. group from Twin Falls that visits the Jerome County Jail.  (see attached certificates).

James is a skilled tradesman: he is a certified rigger, meaning he is the person on a construction site with a dedicated crane who interprets and signs back to the crane operator and is in charge of rigging the cables on the ground around the materials that are lifted to the top, along with being a certified forklift and scissor-life operator.  His brother-in-law, Damian, notes James is a skilled tradesman in the plumbing field.

RECOMMENDATION

James' character is empathy and service.  He has family support.  He has a ten-year period of sobriety.  He has done it before. When he was sober, he served: he served his family, he served the sober community, he served his disabled girlfriend. He felt purpose in it.

James respectfully submits that the Court consider a variance to prevent Ada County from punishing him remotely – by taking into consideration the amount of time James might be able to shave off his "in-prison" prison time if he had been eligible for early release programs.  For instance, if he were able to enroll in the RDAP program which would approximately be the equivalent of shaving off a year below the low end of the guidelines range.

Otherwise, James respectfully requests a sentence at the low end of the guideline range followed by two years of supervised release.  A placement recommendation is being considered and will be submitted at the hearing.

Dated February 26, 2025.


/s/ Joshua Taylor
Joshua B. Taylor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 26, 2025, I caused to be served to the parties indicated below a copy of this document in the following manner:

| | |
|---|---|
| U.S. Attorney's Office<br>Erin Blackadar, AUSA | [X] CM/ECF filing |
| Katie Gibson,<br>United States Probation Officer<br>District of Idaho<br>Katie_Gibson@idp.uscourts.gov | [ ] CM/ECF filing<br>[X] Email |


/s/ Joshua B. Taylor
Joshua B. Taylor

Dear Honorable Judge

My Name is James A Smith Jr. . I am writing in support of my son James III. James III has a big heart and genuinely cares about people. When we lived in Vancouver WA he volunteered to bring food to the homeless and hand out jackets in the winter.

Currently my son helps me care for my 82-year-old father who has dementia. He helps me around the house and yard. I have a bad leg which makes it hard for me to do certain tasks.

I believe my son could be a be a good citizen and a plus to society as a whole. Thank you for your time and consideration in reading this.

Thank you! Sincerely James A Smith Jr.

I am writing to share with you some personal insight about my grandson James Smith as his case has been presented to the judge for sentencing. As his grandmother, I have had the privilege of watching James grow and develop into a remarkable young man. James is an exceptional individual with strong sense of empathy, kindness, and compassion throughout his life, James has demonstrated resilience and determination to do his best. James has faced challenges and overcame them with courage and perseverance. I have witnessed James take responsibility for his actions and make amends when necessary. I respectively request that you convey to the judge, my heart felt plea to consider giving James Smith a lighter sentence. I understand that the legal system must hold individuals accountable for their actions, but I also believe in the power of redemption and personal growth that would allow James Smith to demonstrate his commitment to positive change.

Thank you for your support.


Sincerely, Cathy Klement

1/1

Dear Judge presiding,

I'm writing you this letter in regards to my brother in law James Smith. I have known James for over 13 years now and have seen the good qualities that he has. James has always been a hard-working caring individual that always tries to help others in need. He is a loving uncle to our children and when he is sober and off drugs always puts being a good brother, Son, and uncle first! I understand the seriousness of the charges he is facing and am in no way justifying any actions he has done while under the influence of drugs. I hope with some kind of rehab/treatment he can become the amazing person that we all know he truly is. James truly is one of the good ones and every family member and true friend can attest to that. James has always been involved with helping others in need and always the first to volunteer when he is needed.

James is also a very skilled tradesman in the plumbing field and has a bright future ahead of him. With a little help he could be a very productive member of society. He truly is a give you the shirt off his back kind of person who doesn't expect anything in return, and we all know those are to find.

Sincerely,
Damian K Ellston

Your Honor,

 I would like to introduce myself; my name is Kareen Peevyhouse, and I am the mother of the defendant, James Smith. The goal of this letter is to provide a more complete picture of my son beyond the serious charges he faces.

James is a amazing person to be around. He has a knack for making people smile and a unique ability to recognize when others are struggling. He consistently strives to be a source of light for others.

James has endured significant loss and pain due to addiction, and has successfully battled this challenge in the past. He has the strength and determination to overcome adversity and build a remarkable life for himself, he has created hope and change for hundreds struggling just like him. He is an asset to society!

When James is sober he is a dedicated community member that gives his time to anyone that needs it. Almost every time I called him on the phone, he had to keep it short because he was out helping and making a true difference in the lives of others. Here are just a few examples of how he did this, running errands, providing transportation to doctor appointments and NA meetings, offering handyman work, providing home-cooked meals to grieving families who just lost a loved one. He is also an inspirational speaker, a facilitator of support groups, and a fundraiser for those in need. James has volunteered at numerous organizations, offering help and hope to countless individuals. He is also a skilled and respected blue-collar worker. He was pursuing a career as a journeyman commercial plumber, excelling in his studies and on the job. His employer held him in high regard and had great plans for his future.

Your Honor, I ask you to consider sentencing my son to an intensive inpatient rehabilitation program or the least amount of time to be served at a Federal penitentiary. He is not a malicious person but a addict that is in need of help. He is fully aware of his challenges and is eager to reclaim his life.

Thank you for your time.

Sincerely,

Kareen Peevyhouse

Your Honor,

My name is Kristine Smith, and I am James' older sister.

I am writing to provide a more complete picture of my brother, James. The charges he faces do not accurately reflect the kind of person he truly is. He is a beloved and essential member of our family, a devoted brother, uncle, son, and brother-in-law.

When I think of the kind of person my brother is, I think of the positive impact he has on the lives of others. I would like to share a recent memory that perfectly illustrates this remarkable quality. While my husband and I were at work, James surprised us by tackling our overgrown front and backyard. Knowing my husband's demanding job as a mechanic, James wanted to give him a break by handling the yard work.

As he worked, he noticed the neglected yard of our elderly, disabled neighbor. Unable to care for it herself, she was overwhelmed by the overgrowth. Without hesitation, James offered to help her free of charge and assisted on doing so. She was deeply touched by his kindness and accepted his offer. Over the next three days, James transformed her yard, creating a beautiful space. Watching him, I was filled with pride as I witnessed his compassion and selflessness. This is the true essence of my brother.

I am incredibly proud of the loving and genuine person James is. He forms deep connections with people and goes above and beyond to help others. When he is sober, he is a role model for my children and a reminder of the kindness that still exists in the world.

Your Honor, James has immense potential and is a hardworking member of society. My children and many others look up to him for love, support, and guidance.

James has a bright future ahead of him, and I know he will use this experience to become an even better person. He often says, "For every bad thing I do, I have to do ten good things for others." This philosophy guides his life when he is sober, and he dedicates his time to helping others.

I respectfully request the court sentence my brother with compassion and provide him with necessary inpatient, long-term rehabilitation. This intensive therapy would benefit his recovery and society. James has so much to offer the world. Please grant him the chance to fulfill his full potential and purpose. The world needs people like him, he's here to make a difference.

Thank you,
Sincerely
Kristine Smith

























































































